# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| CLAYTON DWAINE STIPES, | ) |
|     *Plaintiff*, | ) Case No. 2:19-cv-23 |
| v. | ) Judge Travis R. McDonough |
| | ) Magistrate Judge Christopher H. Steger |
| JEFF CASSIDY, Sullivan County Sheriff, et al., | ) |
|     *Defendants*. | ) |

## MEMORANDUM AND ORDER

Before the Court is a *pro se* prisoner's amended complaint filed under 42 U.S.C. § 1983 (Doc. 2), ready for screening pursuant to the Prison Litigation Reform Act ("PLRA"). Plaintiff filed his original complaint on February 22, 2019, and was granted leave to proceed *in forma pauperis*. (Docs. 2, 4.) In his original complaint, Plaintiff, an inmate at Sullivan County Jail, alleged that he has "Stage IV (T1 and N2) squamous cell carcinoma" and that "medical refuses any treatment whatsoever[.]" (Doc. 2, at 2–3.) He also alleged that he has filed several inmate grievances that resulted in "nothing" except he "did get jumped and sent to the hole[.]" (*Id.* at 2.) In his original complaint, he sought medical treatment while incarcerated and compensation for pain and suffering. (*Id.* at 4.)

However, Plaintiffs' allegations were too limited for the Court to infer Defendants' personal involvement. (Doc. 7, at 2–3.) The Court understood these allegations to possibly support, upon further elaboration, claims for denial of access to medical treatment and retaliation against Plaintiff for requesting medical treatment. Accordingly, the Court granted Plaintiff thirty

days to file an amended complaint "with a short and plain statement of facts setting forth exactly how his constitutional rights were violated and the specific individual(s) who violated his constitutional rights." (*Id.* at 3.) The Court also notified Plaintiff that any amended complaint would completely replace his original complaint and that he should not attempt to set forth any new claims in his amended complaint that did not relate back to his original complaint under Rule 15 of the Federal Rules of Civil Procedure.[1] (*Id.*)

## I. SCREENING STANDARD

Under the PLRA, district courts must screen prisoner complaints and shall, at any time, dismiss *sua sponte* any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.*, 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999). The dismissal standard articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts liberally construe *pro se* pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

---

[1] Rule 15 provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B).

2

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 . . . creates a right of action for the vindication of constitutional guarantees found elsewhere").

## II. ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff filed his amended complaint on July 1, 2019, asserting § 1983 claims against the following defendants: Jeff Cassidy, Sullivan County Sheriff; Kristi Frazior, Medical Head Nurse at Sullivan County Jail (the "Jail"); and all staff correctional officers ("COs") and nurses that work in "this part of" the Jail. (Doc. 8, at 1.) At another place in the amended complaint, Plaintiff lists, as "[a]dditional defendants": "COs Lawson and Sawyer and Jones[,] Nurse Cindy[,] Nurse Matt[,] Nurse Sherrell[,] and most of staff." (*Id.* at 2.)

Plaintiff alleges that he has Stage IV squamous cell carcinoma, that there is no cure, and that he previously had radiation and chemotherapy at Holston Valley Hospital. (*Id.* at 5.) He alleges that he was brought to the Jail on June 18, 2018, and left in a cell "all night." (*Id.* at 2–3.) The next morning he was moved to Cell 6 for classification. (*Id.* at 3.) Plaintiff states he "had told all the officers [he] had cancer and needed [his] medication," but "[e]veryone" he asked for help "told [him] to shut up and lay down." (*Id.* at 3–4.) According to Plaintiff, he "was told several times" that he would not receive any "help." (*Id.*) Then, three guards came into his cell and "bent [him] back over a steel table and [were] going to spray [him] with pepper spray and [Plaintiff] told them it was enough." (*Id.*) Plaintiff alleges that the guards then left because there were "several witness[es]." (*Id.*)

When Officers Sawyer and Jones came back, Plaintiff asked them for help again, but they "told [him] to shut up." (*Id.*) Plaintiff—then "in a lot of [throat] pain" from yelling throughout

3

the night for medication—picked up a milk crate and again asked Officer Sawyer for help. (*Id.*) When he was again denied help, he "swung the crate at Officer Sawyer." (*Id.*) Plaintiff alleges that Officers Jones, Sawyer, Lawson, and several other officers then "jumped on" him, "beat[ing] [him] pretty bad" and leaving him with "cuts all over [him]." (*Id.*) He was taken back to booking, where he told Sergeant Strayhorn what had happened. (*Id.* at 3–4.) Strayhorn advised Plaintiff that he would be punished for assaulting the correctional officers, and Plaintiff responded that they had "assaulted [him] first" and that he had asked all of them for help. (*Id.* at 4.)

Plaintiff then saw "the nurses[,]" but "they wouldn't help [him]" either. (*Id.*) The next day, Plaintiff was placed in the "[suicide] cell" and stripped naked with no blanket, mat, toilet paper, or shower for four days. (*Id.*) Plaintiff states he was also diabetic at the time and "was passing out from it and they didn't care." (*Id.*) He alleges that, after seven days, he went before the Disciplinary Board, where "the officers told [him] they [were] wrong and shook [his] hand and apologized." (*Id.*) Nonetheless, he was given sixty days in segregation for the assault on the officers. (*Id.*) While in segregation, he filed "several" medical grievances but "was told" he did not have cancer and did not need medication. (*Id.*) Officer Wade then allegedly put Plaintiff in an "open" cell and told the other men in the cell "to beat [him] up." (*Id.*) Plaintiff then "got in a fight [and] got one eye swelled shut and beat up." (*Id.*) He was taken out of that cell and put in a two-man cell until he had healed. When he was moved to a new cell, he was "beat up again." (*Id.*) Next, Plaintiff was moved to a "medical cell which was the hole more [or] less." (*Id.*)

Plaintiff continued to file medical grievances but "they" told him there was nothing they could do. (*Id.* at 5.) Since then, he has had medical treatment, including having a piece of metal removed that was lodged in his eye from when he was "kicked in the face." (*Id.*) He was also

4

taken off his diabetes medication and told he did not need it after fifteen years of taking it. (*Id.*) He had two tumors cut out of his back. (*Id.*) One was as big as a baseball and the other was a black spot in the middle of his back. (*Id.*) Plaintiff received forty stitches but no pain medication after surgery. (*Id.*) He was told the tumors were not cancerous. (*Id.*) Plaintiff complains that the tumor that was removed from the middle of his back still gives him "trouble" and other symptoms include swelling in his throat and two knots under his arm. (*Id.*)

Lastly, Plaintiff complains that "they have raised the prices of 'sick'" and he and other inmates cannot "afford to go." (*Id.*) Plaintiff seeks "some kind of parole or probation where [he] can get help for the cancer" and compensatory damages for pain and suffering. (*Id.* at 6.)[2]

## III. ANALYSIS

To state a claim under 42 U.S.C. § 1983 claim, Plaintiff must plausibly allege: (1) that he was deprived of a federal right, (2) by a person acting under color of state law. *Braley*, 906 F.2d at 223. A plaintiff "must show that [each] defendant personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct." *Williams v. Hodge*, No. 3:08-0387, 2009 WL 47141, at *3 (M.D. Tenn. Jan. 7, 2009) (citing *Greene v. Barber*, 310 F.3d 889, 889 (6th Cir. 2002)). A supervisor is not individually liable under § 1983 for failing to supervise an offending employee unless the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it." *Comstock v. McCrary*, 273 F.3d 693, 712–13 (6th Cir. 2001) (citations omitted).

On the other hand, "[a] suit against an individual in his official capacity is 'only another way of pleading an action against an entity of which the officer is an agent.'" *Deal v. Polk Cty., Tennessee*, No. 103-CV-385, 2007 WL 1387918, at *6 (E.D. Tenn. May 8, 2007) (quoting

---

[2] The Court broadly construes Plaintiff's prayer for relief to include any relief that would provide him with increased access to medical care.

5

*Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)); *see also Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). Officials sued in their official capacity are liable under Section 1983 only if they have an established policy or custom that causes the alleged injury. *Monell*, 436 U.S. at 690.

### A. Deliberate Indifference to Plaintiff's Serious Medical Needs

Jail officials deprive pretrial detainees of their rights under the Due Process Clause of the Fourteenth Amendment when they are deliberately indifferent to detainees' medical needs. *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008); *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001). "[T]he due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983), and prison officials violate a convicted prisoner's rights when they manifest deliberate indifference by "intentionally denying or delaying access to medical care" for a serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).

To state a claim for deliberate indifference, a plaintiff must allege both an objective and a subjective element: (1) that a defendant knew of and disregarded an excessive risk to inmate health or safety—the official must have both been aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and (2) he must also have drawn the inference. *Cooper v. Cty. of Washtenaw*, 222 F. App'x 459, 465 (6th Cir. 2007) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). The medical need "must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 835.

Plaintiff alleges that Defendants have violated his constitutional rights by refusing him medical treatment. He alleges that he told the guards and nurses that he had Stage IV cancer and

6

repeatedly asked for medication or medical treatment but received none for some amount of time. The Court has some doubt that, based on the allegations in the amended complaint, Plaintiff can show the objective element required for a deliberate-indifference claim. He does not allege that he was experiencing any serious cancer-related symptoms.[3] He does not allege that he had a valid prescription for which the officials refused to provide him medication. Plaintiff alleges that he ultimately did receive medical treatment, including surgery, and that the medical professionals advised him that he did not need additional medications. He does not include dates between his symptoms, if any, and his medical appointments that would allow the Court to infer the jail unduly delayed in providing him access to medical care, nor does he allege that any symptoms worsened due to the delay.

Nonetheless, at the screening stage, the Court will allow Plaintiff's claim of deliberate indifference to his serious medical need to proceed. At this stage, he has sufficiently alleged this claim against Officer Sawyer and Officer Jones, as Plaintiff names them specifically as being aware of and ignoring his need, and the Court will allow these claims to proceed. Plaintiff alleges that other officers were also deliberately indifferent, but his claims against them can only proceed if he amends his complaint to provide their names. Therefore, if Plaintiff wishes to assert his claim of deliberate indifference to his medical needs against any currently unnamed correctional officers, Plaintiff may file a second amended complaint within thirty days, adding their full names and explaining in detail how they knew of and ignored his medical needs. Plaintiff shall not change his complaint in any other way. Finally, Plaintiff has not sufficiently alleged that any of the nursing staff knew of facts from which they could infer a substantial risk of harm to Plaintiff, drew the inference that this risk existed, but did nothing to help him.

---

[3] Plaintiff does allege that he had a sore throat, but he attributes this to yelling for his medication throughout the night, rather than to his need for cancer treatment.

Plaintiffs allegations do not suggest that he received inappropriate or inadequate treatment while in the care of any nurse, nor that there is a policy or custom of providing inappropriate or inadequate care. Accordingly, Plaintiff's claims against the nurses, including Head Nurse Frazior in her official and individual capacities, will be **DISMISSED**.

Relatedly, Plaintiff alleges that the prices of "sick," which the Court interprets as visits to medical professionals, have been repeatedly raised and that he and other inmates cannot afford to go. Plaintiff does not include the prices or any details about how much they have been raised. As to his own alleged deprivations, Plaintiff alleges that he has visited medical professionals at times relevant to his complaint, and he has not alleged that these prices have kept him from receiving treatment for a *serious* medical need, as opposed to keeping him from as many visits as he would prefer. As to deprivations suffered by other inmates, Plaintiff does not have standing to assert claims on their behalf. *See Powers v. Ohio*, 499 U.S. 400, 410–11 (1991). Accordingly, any claims Plaintiff seeks to assert based on the price of "sick" visits will be **DISMISSED**.

### B. Use of Excessive Force

In determining whether an official has used excessive force amounting to a constitutional violation,

> a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*McDowell v. Rogers,* 863 F.2d 1302, 1306 (6th Cir. 1988). A factual allegation that allows a plausible inference that correctional officers used excessive force to subdue a pretrial detainee states a claim under the Due Process Clause of the Fourteenth Amendment. *See Burgess v.*

*Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). Plaintiff's allegation suggest that Jones, Sawyer, and Lawson may have used excessive force against him when they and several other officers jumped on him and beat him badly after he swung a crate at Officer Sawyer. Plaintiff's allegation that the officers apologized to him and told him they had been wrong when he went before the Disciplinary Board further supports the plausibility of his excessive-force claims. Plaintiff's excessive-force claims will proceed as to Officers Jones, Sawyer, and Lawson.

### C. Deliberate Indifference to Plaintiff's Safety

The Due Process Clause of the Fourteenth Amendment "provides prisoners with a right to be free "'from violence at the hands of other inmates.'" *Deal*, 2007 WL 1387918, at *8 (quoting *Farmer*, 511 U.S. 833). Officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832; *see Deal*, 2007 WL 1387918, at *8 (applying this standard where § 1983 plaintiff alleged jail officials had induced inmates to beat plaintiff). To amount to a constitutional violation, the deprivation alleged must be "sufficiently serious" and the prison official must have acted with a "sufficiently culpable state of mind," namely deliberate indifference "to inmate health or safety." *Deal*, 2007 WL 1387918, at *8 (quoting *Price v. Sasser,* 65 F.3d 342, 345 (4th Cir. 1995) (quoting *Farmer,* 511 U.S. at 834)). Plaintiff's account of Officer Wade placing him in a cell and telling the other inmates there to beat him up, after which Plaintiff was hurt badly enough to require medical attention, alleges a "sufficiently serious" deprivation with a "sufficiently culpable state of mind" to state a claim. *See id.* Accordingly, Plaintiff's claim against Officer Wade will proceed.

### D. Claims Against Other Defendants

To the extent Plaintiff seeks to bring claims based on excessive force, deliberate indifference, or any other deprivation against the other Defendants, he has not set forth sufficient

9

information for the Court to determine whether any other Defendant was personally involved in each alleged violation of his rights, nor does he allege that the actions of Officers Lawson, Sawyer, Jones, or Wade, or the actions of the unnamed corrections officers, were authorized by any other official, *see Williams* 2009 WL 47141, at *3, or by the Jail's policy or custom, *see Monell*, 436 U.S. at 690. As such, Plaintiff's complaint fails to state a claim upon which relief may be granted under § 1983 as to any other named Defendant that has not been discussed above.

## IV. CONCLUSION

For the reasons set forth above:

1. If Plaintiff wishes to assert his claim of deliberate indifference to his medical needs against any currently unnamed correctional officers, he **SHALL** file a second amended complaint within **thirty days**, adding their full names and explaining in detail how they knew of and ignored his medical needs. Any correctional officer whose full name is not added within thirty days, with allegations sufficient to infer that Plaintiff has a claim against him, will be **DISMISSED** from this action. Plaintiff **SHALL NOT** amend his complaint in any other way.

2. All claims in the complaint other than deliberate-indifference to medical needs claims against Officers Sawyer and Jones, and unnamed correctional officers; the excessive-force claims against Officers Lawson, Sawyer, and Jones; and the deliberate-indifference claims against Officer Wade, are **DISMISSED**;

3. The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendants Officer Lawson, Officer Sawyer, Officer Jones, and Officer Wade;

4. Plaintiff is **ORDERED** to complete the service packet with the full names of each Defendant[4] and return it to the Clerk's Office within twenty days of entry of this order;

5. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

---

[4] Plaintiff is **ADVISED** that the U.S. Marshals will not serve Defendants unless Plaintiff provides both their first and last names on the summons, and failure to provide a summons with full names may result in dismissal of this action for failure to prosecute.

6. Service on Defendants shall be made pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective;

7. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packet, this action may be dismissed;

8. Defendants **SHALL** answer or otherwise respond to the complaint within twenty-one days from the date of service. Failure of Defendants to timely respond to the complaint may result in entry of judgment by default; and

9. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a *pro se* party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently.

**SO ORDERED**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**